KAREN P. HEWITT
United States Attorney
CINDY M. CIPRIANI
Special Attorney
California State Bar No. 144402
TIMOTHY C. STUTLER
Special Attorney
California State Bar No. 131794
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7390
Facsimile: (619) 557-5004
Email: cindy.cipriani@usdoj.gov

Attorneys for Defendant
Eric H. Holder, Jr.,
Attorney General of the United States

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| IRA DAVES,<br><br>            Plaintiff<br><br>      v.<br><br>ERIC HOLDER, JR.,<br>ATTORNEY GENERAL,<br><br>            Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: CV 08-07376 CAS (AGRx)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT, IN FULL OR IN PART, OR, IN THE ALTERNATIVE, TO STRIKE SUPERFLUOUS AND IMPROPER ALLEGATIONS<br><br>Date:   October 19, 2009<br>Time:   10:00 a.m.<br>Ctrm:   5<br>Judge:  Christina A. Snyder |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TOPICAL INDEX

|  |  |  | Page |
|---|---|---|---|
| TABLE OF AUTHORITIES |  |  | ii |
| I | INTRODUCTION |  | 1 |
| II | FACTUAL BACKGROUND |  | 2 |
| III | DISCUSSION |  | 3 |
|  | A. | THE COMPLAINT FAILS TO COMPLY WITH FED. R. CIV. P. 8 | 3 |
|  |  | 1. The FAC is not plausible under Iqbal | 3 |
|  |  | 2. The FAC is Repetitive and Filled with Inappropriate Legal Conclusions | 10 |
|  |  | 3. If the Court Declines to Dismiss or Strike the Entire Complaint, in the Alternative, the Court Should Either Strike Superfluous, Redundant Allegations or Excuse Defendant from Answering Such Assertions | 12 |
|  | B. | THE THIRD CAUSE OF ACTION FOR RETALIATION IS CUMULATIVE | 13 |
|  | C. | THE FOURTH CAUSE OF ACTION FAILS TO STATE A VIABLE PATTERN OR PRACTICE CLAIM | 14 |
|  |  | 1. Methods of Proof Differ Significantly Between "Pattern or Practice" Suits and Individual Suits | 14 |
|  |  | 2. Daves Is Not Entitled to the "Pattern or Practice" Method of Proof, Cannot Pursue the Type of Broad Injunctive Relief Sought in "Pattern or Practice" Suits, and did Not Exhaust Class Claims | 15 |
|  | D. | THE FIFTH CAUSE OF ACTION FAILS TO STATE A VIABLE QUID PRO QUO CLAIM | 18 |
|  | E. | PLAINTIFF'S CLAIMS REGARDING THE ADMINISTRATIVE PROCESSING OF HIS EEO COMPLAINT DO NOT PROVIDE GROUNDS FOR RELIEF | 20 |
| IV | CONCLUSION |  | 21 |

1

# TABLE OF AUTHORITIES

2

Cases                                                                                    Page

3

4

Al-Kidd v. Ashcroft,
    2009 WL 2836448 (9th Cir. 2009)                                        6

5

Argeropoulos v. Exide Technologies,
    2009 WL 2132443 (E.D. N.Y. July 8, 2009)                                8

6

7

Armstrong v. Sexson,
    2007 WL 2288297 (E.D. Cal. August 8, 2007),
    quoting Twombly, 550 U.S. at 555                                         4

8

Artis v. Greenspan,
    158 F.3d 1301 (D.C. Cir. 1998)                                          18

9

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009)                                    2, 4, 5, 6, 7, 8, 9, 10

10

11

Bacon v. Honda of America Manufacturing, Inc.,
    370 F.3d at 575                                                         16

12

13

Belhomme v. Widnall,
    127 F.3d 1214 (10th Cir. 1997)                                          18

14

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)                 4, 5, 8

15

16

Bolden v. Ashcroft,
    2005 WL 1903567 (D.D.C. July 15, 2005)                                  20

17

Brenston v. Wal-Mart,
    2009 WL 1606935 (N.D. Ind. June 8, 2009)                                8

18

19

Brown v. Coach Stores, Inc.,
    163 F.3d 706 (2d. Cir. 1998)                                            16

20

Burlington Industrial Inc. v. Ellerth,
    524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)                 18, 19

21

22

Carrigan v. Cal. State Legislature,
    263 F.2d 560 (9th Cir.1959)                                             11

23

Chuang v. University of Cal. Davis,
    225 F.3d 1115 (9th Cir.2000)                                            13

24

25

Conley v. Gibson,
    355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)                        4, 7

26

Cooper v. Federal  Reserve Bank of Richmond,
    467 U.S. 867 (1984)                                                     14

27

Courie v. Alcoa Wheel & Forged Products,
    2009 WL 2497928 (6th Cir. Aug. 18, 2009)                                7

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES (Continued)

Cases     Page

Cox v. America Cast Iron Pipe Co.,
784 F.2d 1546 (11th Cir.1986) — 14

Davis v. Coca-Cola Bottling Co. Consolidated,
516 F.3d 955 (11th Cir. 2008) — 16

Diaconu v. Department of Defense,
2005 WL 3078193 (E.D.Pa. Nov. 15, 2005) — 20

E.E.O.C. v. Crown Zellerbach Corp.,
720 F.2d 1008 (9th Cir.1983) — 15

Equality Employment Opportunity Commission v. Borden's, Inc.,
724 F.2d 1390 (9th Cir.1984) — 13

Fallon v. United States Government, Number CIV S-06-1438,
2007 WL 707531 (E.D.Cal. March 6, 2007) — 12

Fantasy, Inc. v. Fogerty,
984 F.2d 1524 (9th Cir.1993), overruled on other grounds,
510 U.S. 517 (1994) — 12

Fletcher v. Philip Morris USA Inc.,
2009 WL 2067807 (E.D. Va July 14, 2009) — 9

Foster v. Center Tp. of LaPorte County,
798 F.2d 237 (7th Cir. 1986) — 16, 17

Fowler v. UPMC Shadyside,
2009 WL 2501662 (3d Cir. Aug. 18, 2009) — 7

Gilbert v. Ely Lilly & Co.,
56 F.R.D. 116 (D.Puerto Rico 1972) — 12

Gillibeau v. City of Richmond,
417 F.2d 426 (9th Cir.1969) — 11

Golod v. Bank of AM. Corp,
2009 WL 1605309 (D.Del. June 4, 2009) — 8

Grayson v. Schriro, Number CIV 05-1749,
2007 WL 91611 (D.Ariz. Jan. 11, 2007) — 12

Gulley v. Orr,
905 F.2d 1383 (10th Cir. 1990) — 18

Hearns v. San Bernardino Police Department,
530 F.3d 1124 (9th Cir. 2008) — 12, 13

Henson v. City of Dundee,
682 F.2d 897 (C.A. Fla., 1982) — 13, 14

1

<u>TABLE OF AUTHORITIES</u> (Continued)

2

<u>Cases</u>                                                                     <u>Page</u>

Hill v. England,
        2005 WL 3031136 (E.D.Cal. Nov. 8, 2005)                            20

International Broth. of Teamsters v. United States,
        431 U.S. 334, 975 S. Ct. 1843, 52 L. Ed. 2d 396 (1977)        14, 15

Jones v. Community Redev. Agency,
        733 F.2d 646 (9th Cir.1984)                                             4

Kinsey v. Nicholson,
        2007 WL 2774211 (M.D. Fla. Sep. 24, 2007)                      20

Logan v. Sectek, Inc.,
        2009 WL 1955441 (D. Conn. July 8, 2009)                           8

Lowery v. Circuit City Stores, Inc., 158 F.3d 742)
        (quoting Bacon v. Honda of Am. Mfg., Inc.,
        370 F.3d 565, 575 (6th Cir. 2004)                                     15

Mansourian v. Board of Regents of University of Cal. at Davis,
        2007 WL 3046034 (E.D. Cal. 2007)                                  15

Marshall v. United Nations, Number CIV S-05-2575,
        2006 WL 1883179 (E.D.Cal. July 6, 2006)                          13

Mayes v. Potter,
        2003 WL 23220738 (W.D. Mich. 2003)                              20

McHenry v. Renne,
        84 F.3d 1172 (9th Cir.1996)                                            11

Meritor Savings Bank, FSB v. Vinson,
        477 U.S. 57, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)         13, 19

Moss v. U.S. Secret Service,
        572 F.3d 962 (9th Cir. 2009)                                         6, 10

Nevijel v. North Coast Life Insurance Co.,
        651 F.2d 671 (9th Cir.1981)                                            4

Nichols v. Frank,
        42 F.3d 503 (9th Cir. 1994)                                           19

Olszewski v. Symyx Technologies, Inc.,
        2009 WL 1814320 (N.D. Cal. June 24, 2009)                       8

Ong v. Cleland,
        642 F.2d 316 (9th Cir. 1981)                                          17

Penk v. Oregon State Board of Higher Education,
        816 F.2d 458 (9th Cir. 1987)                                          14

iv                                 Def's MTD Brief   CV08-07376

TABLE OF AUTHORITIES (Continued)

Cases                    Page

Persons v. Runyon,
998 F. Supp. 1166 (D. Kan. 1998) ........ 18

Saul v. United States,
928 F.2d 829 (9th Cir. 1991) ........ 17

Siegel v. Kreps,
654 F.2d 773 (D.C. Cir. 1981) ........ 17

Simmons v. Abruzzo,
49 F.3d 83 (2d Cir.1995) ........ 12

Sischo-Nownejad v. Merced Committee College District,
934 F.2d 1104 (9th Cir. 1991) ........ 13

Sledge v. J.P. Stevens & Co.,
585 F.2d 625 (4th Cir.1978) ........ 14

State of California ex rel. State Lands Commission v. United States,
512 F. Supp. 36 (N.D.Cal.1981) ........ 12

Swierkiewicz v. Sorema N.A.,
534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) ........ 7

Vinieratos v. Aldridge,
939 F.2d 762 (9th Cir. 1991) ........ 17

Wade v. Sec'y of the Army,
796 F.2d 1369 (11th Cir. 1986) ........ 17

Wilson v. Pallman,
2009 WL 2448577 (E.D. Pa., 2009) ........ 7

Yamaguchi v. United States Department of Air Force,
109 F.3d 1475 (9th Cir.1997) ........ 4

Statutes

42 U.S.C. § 2000e-16(c) ........ 17

42 U.S.C. §2000e-6(a)-(c) ........ 14

Rules and Regulations

Fed. R. Civ. P. 8 ........ 2, 3, 4, 5, 8, 10, 11

Fed.R.Civ.P. 12(f) ........ 12

29 C.F.R. § 1614.105(d) ........ 18

1

2

## TABLE OF AUTHORITIES (Continued)

<u>Rules and Regulations</u>                                                                                    <u>Page</u>

29 C.F.R. §1614.107                                                                                                      20

29 C.F.R. § 1614.204                                                                                                17, 18

29 C.F.R. §§ 1614.408                                                                                                  18

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KAREN P. HEWITT
United States Attorney
CINDY M. CIPRIANI
Special Attorney
California State Bar No. 144402
TIMOTHY C. STUTLER
Special Attorney
California State Bar No. 131794
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7390
Facsimile: (619) 557-5004
Email: cindy.cipriani@usdoj.gov

Attorneys for Defendant
Eric H. Holder, Jr.,
Attorney General of the United States

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| IRA DAVES, | ) | Case No.: CV 08-07376 CAS (AGRx) |
|        Plaintiff | ) ) | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS |
|        v. | ) ) ) | PLAINTIFF'S FIRST AMENDED COMPLAINT, IN FULL OR IN PART, OR, IN THE ALTERNATIVE, |
| ERIC HOLDER, JR., ATTORNEY GENERAL, | ) ) | TO STRIKE SUPERFLUOUS AND IMPROPER ALLEGATIONS |
|        Defendant. | ) ) ) | Date:   October 19, 2009 Time:   10:00 a.m. |
| _____ | ) | Ctrm:   5 Judge:  Christina A. Snyder |

I

INTRODUCTION

The instant Title VII discrimination action arises out of Plaintiff Ira Daves'
employment as an Assistant U.S. Attorney ("AUSA") in the Civil Division of the U.S.
Attorney's Office ("USAO") for the Central District of California. Plaintiff's voluminous
105-page First Amended Complaint ("FAC") attempts to state six causes of action,

several of which are legally insupportable.  Moreover, the FAC fails to comply with the pleading standards outlined by the U.S. Supreme Court in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009), and otherwise violates Fed. R. Civ. P. 8.  Accordingly, as more fully set forth below, Defendant seeks a ruling that (1) dismisses Plaintiff's third (retaliation) cause of action as redundant and unnecessary; (2) determines that his fourth (systemic discrimination), and fifth (quid pro quo) causes of action fail to state a viable claim; (3) strikes or dismisses the entire FAC without prejudice, due to serious pleading deficiencies; (4) permits Plaintiff to file a new complaint, not to exceed 30 pages, containing specific, concise factual assertions that provide sufficient notice without resorting to repetitious, conclusory, superfluous, argumentative, and inflammatory allegations; and /or (5) either strikes improper, argumentative, and repetitive allegations or excuses Defendant from answering same.

II

<u>FACTUAL BACKGROUND</u>

For the past fourteen years, Daves has been a civil AUSA with significant experience defending employment discrimination claims.  FAC p.3, ¶6.  Plaintiff, who was hired as a Title VII lawyer, received "consistently favorable," "glowing" reviews and the "highest possible overall rating."  Moreover, his superiors complimented Plaintiff's "outstanding," "thorough," "timely and forceful" work and noted his role as a "resource to the office in the area of Title VII litigation."  <u>Id.</u> at p.5, ¶¶9-10, pp. 6-7, ¶¶14-15.

The gravamen of Plaintiff's complaint is that he has not been provided sufficient opportunities to litigate non-employment matters.  The FAC reveals a sound reason for management's case assignment approach: In January 31, 2008, Chief Weidman informed Plaintiff that he was reluctant to assign certain matters to Plaintiff because he was forced to personally respond to several agency complaints lodged against Plaintiff.  FAC at p.19-20, ¶51.  Rather than taking this counseling session to heart, Daves claims USAO management "started secretly trying to find some articulable basis" for not assigning Daves the cases he wanted to handle.  <u>Id.</u> at p. 6, ¶12.  Daves further contends that while

his supervisor "lulled Daves into trusting him" (FAC at p. 18, ¶47), he "began secretly scrutinizing his work," imposed "a series of secret tests through which Daves could ostensibly prove himself," harbored "secret expectations" of Daves, and "continued to look for reasons" to avoid assigning Plaintiff non-employment matters. Id. at p. 17, ¶¶42 - 44, p. 20, ¶¶54; p.70, ¶213.  Daves alleges management "was operating clandestinely, to develop a record by which to create the appearance that Daves did not merit tougher assignments or advancement" and withdrew client agency support in a manner "obviously intended to sabotage Daves' ability to maintain a high level of performance, isolate him from his colleagues, and marginalize" his contributions  Id. at p..71, ¶¶214-216.

In Plaintiff's view, the management conspiracy was not limited to Chief Weidman; it allegedly extended to the U.S. Attorney, the entire Front Office, General Counsel at the Executive Office for U.S. Attorneys ("EOUSA"), and the agency's upper level officials. FAC at p. 17, ¶45; p.67, ¶203, pp.71-72, ¶218.  Daves claims EOUSA uses "Title VII lawyer" as a code term for "black lawyer" and contends "black attorneys like management felt Daves was suited for discrimination work and nothing more." Id. at p. 21, ¶57.  Plaintiff further contends the EEO investigator, who asked him to sign a standard Privacy Act waiver, engaged in "Privacy Act improprieties, which suggested criminal implications, [and] confirmed that [she] was not impartial." FAC at p.45, ¶130.

III

DISCUSSION

A.   THE COMPLAINT FAILS TO COMPLY WITH FED. R. CIV. P. 8

1.   The FAC is not plausible under Iqbal

Fed R. Civ. P. 8 establishes general pleading rules and requires that in order to state a claim for relief, a pleading must contain a short and plain statement of the claim. Fed.R.Civ.P. 8(a)(2).  Additionally, each allegation must be simple, concise and direct. Fed.R.Civ.P. 8(d)(1).  Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly.

Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir.1984);  see Yamaguchi v. United States Dept. of Air Force, 109 F.3d 1475, 1481 (9th Cir.1997).  A complaint which fails to comply with Rule 8 may be dismissed with prejudice pursuant to Rule 41(b).  Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir.1981).

Additional Rule 8 pleading standards apply to complaints charging illegal motives; in such cases conclusory allegations are disregarded, and the Court is to ask whether well-pled factual allegations plausibly suggest that defendant engaged in the intentional discrimination at issue.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007).  Iqbal applied Fed. R. Civ. P. 8 pleading standards clarified in Twombly, an antitrust case, to a Bivens case alleging religious discrimination by a post September 11th immigration detainee.  See Iqbal, 129 S. Ct. at 1939, 1949-50.  Twombly abandoned the familiar rubric of Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957), under which a complaint was deemed sufficient "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Twombly required that an antitrust complaint include "[f]actual allegations [sufficient] to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  To withstand a motion to dismiss, a complaint "'must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'"  Armstrong v. Sexson, 2007 WL 2288297, *2 (E.D. Cal. August 8, 2007), quoting Twombly, 550 U.S. at 555 (quoting C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)).  Rather, a complaint must "plausibly" show a valid claim.  Id. at 557.

Iqbal held that Twombly's plausibility standard is part and parcel of Fed. R. Civ. P. 8's requirement that every complaint, not just antitrust complaints, "show[] that the pleader is entitled to relief." Iqbal, 129 S. Ct. at 1950, 1953; Twombly, 550 U.S. at 555. Amplifying Twombly's holding,  Iqbal emphasized that Rule 8 requires "more than an ///

unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 1949. "Rule 8...does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. If the "allegations are conclusory," they are "not entitled to be assumed true." Id. For example, the Iqbal plaintiff alleged religious and national origin discrimination by officials who allegedly directed harsh conditions of confinement for Muslim detainees with suspected terrorist connections. Plaintiff alleged that the officials "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement" solely on account of [his] religion...." Id. at 1951. The Court characterized these allegations as nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim and found that the conclusory nature of the allegations "disentitles them to the presumption of truth." Id.

Iqbal also clarified that factual allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 1940 (quoting Twombly, 550 U.S. at 570) (emphasis added). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (citing Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (citing Twombly, 550 U.S. at 557). The Iqbal complaint did not meet the plausibility standard. Id. at 1952. The plaintiff alleged that he was one of "thousands of Arab Muslim men" detained on immigration charges at the defendants' "direction" after September 11, 2001, and that defendants "approved" a policy of subjecting "high interest" detainees to "highly restrictive conditions of confinement" because of their religion or national origin. Iqbal, 129 S. Ct. at 1939, 1942, 1944. The Court recognized that this allegation, if true, was "consistent with" an unconstitutional purpose, i.e., selecting detainees for harsh treatment because of their "religion[] or

national origin." Id. at 1951-52.  However, these allegations would not support a Bivens claim because a "more likely explanation[]" was that the defendants simply "sought to keep suspected terrorists in the most secure conditions available...." Id. at 1951-52.  In light of this "obvious alternative explanation," the Iqbal plaintiff's religious discrimination claim was "not a plausible conclusion."  Id.

The Ninth Circuit had the opportunity to expound on Iqbal's reach in Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009), which involved allegations of widespread and secretive viewpoint discrimination.  The Moss plaintiffs claimed that in ordering the relocation of their demonstration, defendants "acted in conformity with an officially authorized sub rosa Secret Service policy of suppressing speech critical of the President."  Id.  The Ninth Circuit found that "the critical question" to be decided was "whether Plaintiffs' allegation that the Agents ordered the relocation of their demonstration because of its anti-Bush message is plausible, not merely possible."  The court found the allegation did not pass the plausibility test:

> The bald allegation of impermissible motive on the Agents' part, standing alone, is conclusory and is therefore not entitled to an assumption of truth. The same is true of Plaintiffs' allegation that, in ordering the relocation of their demonstration, the Agents acted in conformity with an officially authorized sub rosa Secret Service policy of suppressing speech critical of the President. The allegation of systematic viewpoint discrimination at the highest levels of the Secret Service, without any factual content to bolster it, is just the sort of conclusory allegation that the Iqbal Court deemed inadequate, and thus does nothing to enhance the plausibility of Plaintiffs' viewpoint discrimination claim against the Agents.

Moss, 572 F.3d at 970; see also Al-Kidd v. Ashcroft, 2009 WL 2836448, at *22-25 (9th Cir. 2009) (noting that, "[p]ost-Twombly, plaintiffs face a higher burden of pleading facts," and finding that while plaintiff alleged a plausible claim for relief under 18 U.S.C. § 3144, the complaint's "non-specific allegations" regarding Attorney General's

involvement in setting harsh confinement conditions "fail to nudge the *possible* to the *plausible,* as required by Twombly") (emphasis in original).

In the employment context, the Sixth and Third Circuits have held that the "plausibility" pleading standard enunciated in Iqbal applies to garden-variety discrimination cases.  See e.g., Courie v. Alcoa Wheel & Forged Prods., 2009 WL 2497928 (6th Cir. Aug. 18, 2009) (dismissing civil rights action under Iqbal for failure to state a claim) and Fowler v. UPMC Shadyside, 2009 WL 2501662 (3d Cir. Aug. 18, 2009) (holding that Iqbal applies to employment discrimination claims and supercedes Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992, 152 L.Ed.2d 1 (2002), to the extent it relies on Conley v. Gibson).  In Fowler, the Third Circuit discussed the two-step analysis of a discrimination complaint required by Iqbal:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id*. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 15. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 2009 WL 2501662 at *5.

Applying Iqbal, several district courts have dismissed employment suits that failed to pass the plausibility and sufficiency standard.  See Wilson v. Pallman, 2009 WL 2448577, at *6 (E.D. Pa., 2009) (dismissing gender discrimination lawsuit as conclusory under Iqbal; "Wilson provides a list of men that she alleges were similarly-situated and were not transferred or fired at the same time as she was to show the required 'causal nexus' between her gender and the adverse action. Wilson proffers no other evidence of a causal nexus, *i.e.* discriminatory animus, etc...such a lawsuit must allege more than

"[t]hreadbare recitals of a cause of action" to suffice under Rule 8...plaintiff's complaint fails to raise an inference of discrimination based on her gender so as to state a claim under Title VII"); Golod v. Bank of AM. Corp, 2009 WL 1605309, at *3 (D.Del. June 4, 2009) (dismissing complaint where plaintiff made "a sweeping claim that for ten years she was discriminated against" and alleged she "was never afforded the educational and professional opportunities to remain a viable, up-to-date employee," finding that Golod's "conclusory allegations that her failure to be promoted was a result of discrimination and retaliation cannot be credited and they are insufficient to demonstrate that she is entitled to discovery to prove her claims."); Brenston v. Wal-Mart, 2009 WL 1606935, at *4 (N.D. Ind. June 8, 2009) ("Although the complaint does allege that his supervisors gave him impossible tasks, there is no hint that they did so as a way to discriminate against him"; plaintiff must allege disability discrimination claim with "enough facts to raise his claim beyond the speculative level" as described in Twombly, Erickson, and Iqbal); Olszewski v. Symyx Techs., Inc., 2009 WL 1814320, *3 (N.D. Cal. June 24, 2009) (invoking Iqbal in dismissing plaintiff's Age Discrimination in Employment Act ("ADEA") claim, where plaintiff "failed to plead facts that raise more than the mere possibility that her age was the but-for reason for her termination"); Logan v. Sectek, Inc., 2009 WL 1955441, at *3 (D. Conn. July 8, 2009) (invoking Iqbal in dismissing plaintiff's claims of disability discrimination, finding that "it is merely possible, but not plausible, that Woodward perceived Logan to be disabled in accordance with the ADA definition. Logan could have alleged, but does not allege, other facts that would have taken his ADA claim from the realm of possibility to plausibility"); Argeropoulos v. Exide Techs, 2009 WL 2132443, at *4-6 (E.D. N.Y. July 8, 2009) (relying on Iqbal to dismiss plaintiff's same-sex harassment, national origin discrimination, and hostile work environment claims, ruling that "[a]t most, Plaintiff's national origin hostile work environment claim is 'conceivable.'...But without more information concerning the kinds of anti-Greek animus directed against Plaintiff, and the frequency thereof, the Court ///

cannot conclude that Plaintiff's claim is 'plausible'"); <u>Fletcher v. Philip Morris USA Inc.</u>, 2009 WL 2067807, at *4-10 (E.D. Va July 14, 2009) (invoking <u>Iqbal</u> in dismissing plaintiff's Title VII race and retaliation claims because of their conclusory, implausible and non-specific nature, and finding plaintiff's claim that he "received a low-performance rating because he filed an EEOC charge" was facially implausible because he received the same rating before filing the EEOC charge).

Here, Plaintiff's 105-page FAC suffers from essentially the same pleading defects described above. Taken as a whole, his allegations are highly implausible. For instance, Plaintiff alleges, with no factual foundation, that Daves' supervisor "lulled Daves into trusting him" (FAC at p. 18, ¶47), "began secretly scrutinizing his work," imposed "a series of secret tests through which Daves could ostensibly prove himself," harbored "secret expectations" of Daves, and "continued to look for reasons" to avoid assigning Plaintiff non-employment matters. <u>Id.</u> at p. 17, ¶¶42 - 44, p. 20, ¶¶54; p.70, ¶213. Daves makes the even more implausible claim that management "was operating clandestinely, to develop a record by which to create the appearance that Daves did not merit tougher assignments of advancement" and withdrew client agency support in a manner "obviously intended to sabotage Daves' ability to maintain a high level of performance, isolate him from his colleagues, and marginalize" his contributions <u>Id.</u> at p..71, ¶¶214-216. Plaintiff's contention that the U.S. Attorney and Executive Office of U.S. Attorneys participated in a conspiratorial approach to the routine assignment of cases renders the allegations highly suspect. A more logical conclusion is that local civil supervisors assigned cases based on relevant experience, skill, and client needs; indeed, the FAC concedes that Plaintiff expressed an interest in handling Title VII cases, was hired as a Title VII lawyer, and received accolades for his substantial expertise in that practice area. Moreover, the allegation that the chief of one of the largest civil divisions in the nation, whose performance is evaluated based on the litigation successes of his attorneys, would deliberately sabotage Plaintiff, withdraw agency support, and "orchestrate a series of ///

1  pranks in the form of innocent administrative mishaps" (FAC at p.75, ¶229) is precisely

2  the type of implausible allegation rejected by the Court in <u>Iqbal</u>.

3      The FAC is also conclusory.  Several of Plaintiff's claims have no factual

4  foundation, including but not limited to the following: managers give non-Asian

5  minorities a disproportionately high number of smaller cases (FAC at pp.29-30, ¶82); the

6  six civil managers "consign disfavored employees to professional obscurity" in a manner

7  that is "carefully calculated and not left to chance" (FAC at p.30, ¶83); civil supervisors

8  have no accountability (FAC at p.30, ¶84); Chief Weidman could not see a "black, openly

9  gay, assertive individual representing the office in visible cases" (FAC at p.31, ¶87);

10  management was "improperly influenced by stereotypes," its view of Plaintiff's abilities

11  was "tied to deeply ingrained race and gender biases," and his personality "contradicted

12  their expectations of how a black man holding a subordinate position should behave"

13  (FAC at pp. 31-32, ¶¶87-88); the EEO investigator engaged in "Privacy Act

14  improprieties, which suggested criminal implications, [and] confirmed that Crawford was

15  not impartial."  FAC at p.45, ¶130.  The conclusory allegations "do nothing to enhance

16  the plausibility" of Plaintiff's claims.  Moss, 572 F.3d at 970.

17      In sum, Plaintiff should not be permitted to initiate expensive, time-consuming,

18  distracting, full-throttle litigation of far-ranging, specious allegations – particularly those

19  that insult the integrity of dedicated public servants –   based on nothing more than

20  subjective opinions and speculation.  Plaintiff's claims must demonstrate that his claims

21  are not merely conceivable: his allegations must be both plausible and factually supported

22  to pass muster under <u>Iqbal</u>.

23          2.   The FAC is Repetitive and Filled with Inappropriate Legal

24               Conclusions

25      In addition to its <u>Iqbal</u> deficiencies, the FAC is verbose and repetitive, rather than

26  a short, plain statement of the case as required by Rule 8.  The hundreds of averments

27  ///

28  ///

Def's MTD Brief   CV08-07376

in the FAC will force Defendant to spend hundreds of hours on discovery based on unfounded accusations, and. even answering the complaint will be a time-consuming and unjustified burden.

Moreover, the complaint is inflammatory, argumentative, and replete with inappropriate legal analyses and conclusions.  See e.g., FAC at p.49, ¶147 ("there is a palpable chill in the air; the silence is provocative."); Id. at p.53, ¶157 (claiming that "a black man employed in a white-dominated workplace with antipathy towards black men, particularly those who do not conform to traditional race or gender-based stereotypes, might find his bills left unpaid, his office space invaded, and his work and professional relationships sabotaged"); Id. at p.65, ¶196 and p.80, ¶245 (characterizing the assignment of Title VII cases to Plaintiff as akin to "perpetual de jure segregation" motivated by "stubborn, irrational prejudice" and tantamount to forcing him to ride "in the back of the bus"); Id. at p.66, ¶197 ("The game was, thus, rigged"); Id. at pp.59-60, ¶¶178-179 (making legal arguments regarding C.F.R. Section 1614.105(a), the timeliness regulation); pp. 59-64, ¶¶179-190 (providing legal analysis of discovery rule); pp.76-77 (discussing legal proof standards under Title VII); and p. 81 (citing a district court opinion).

In the interest of judicial economy, the Court should decline to substantively analyze the 105-page FAC to determine which of the many allegations to strike; the Court should instead exercise its discretion to strike Plaintiff's complaint in its entirety without prejudice and order Plaintiff to file an amended complaint that fully complies with Rule 8.  Gillibeau v. City of Richmond, 417 F.2d 426, 431 (9th Cir.1969) (and cases cited); Carrigan v. Cal. State Legislature, 263 F.2d 560, 565-66 (9th Cir.1959).  Plaintiff's new complaint should eliminate all preambles, introductions, argument, speeches, explanations, stories, vouching, legal arguments, conclusory and implausible allegations, and speculative summaries.  See generally McHenry v. Renne, 84 F.3d 1172 (9th Cir.1996) (affirming dismissal of § 1983 complaint for violation of Rule 8 after warning). ///

3. If the Court Declines to Dismiss or Strike the Entire Complaint, in the Alternative, the Court Should Either Strike Superfluous, Redundant <u>Allegations or Excuse Defendant from Answering Such Assertions</u>

The district court "may strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "Redundant" matter is that which "consists of allegations that constitute a needless repetition of other averments or which are wholly foreign to the issue to be denied." <u>Gilbert v. Ely Lilly & Co.</u>, 56 F.R.D. 116, 120 n. 4 (D.Puerto Rico 1972). "By 'immaterial' matter it is generally meant that which has no essential or important relationship to the claim for relief or the defenses being pleaded." <u>Id.</u> at 120 n. 5; <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir.1993), overruled on other grounds, 510 U.S. 517 (1994) (function of motion to strike is to avoid expenditure of time and money that arise from litigating spurious issues by dispensing with them prior to trial). Superfluous historical allegations "are a proper subject of a motion to strike." <u>Id.</u> Where a motion to strike "may have the effect of making the trial of the action less complicated, or have the effect of otherwise streamlining the ultimate resolution of the action, the motion to strike will be well taken." <u>State of California ex rel. State Lands Comm'n v. United States</u>, 512 F.Supp. 36, 38 (N.D.Cal.1981).

The Ninth Circuit noted in <u>Hearns v. San Bernardino Police Dept.</u>, 530 F.3d 1124, 1139 (9th Cir. 2008) that as an alternative to dismissing a lengthy complaint with prejudice, the district court can strike surplusage allegations or excuse defendant from responding to same:

The district court also has ample remedial authority to relieve a defendant of the burden of responding to a complaint with excessive factual detail. One option would have been to simply strike the surplusage from the FAC. *See Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir.1995); *Fallon* v. *United States Gov't*, No. CIV S-06-1438, 2007 WL 707531, *2 (E.D.Cal. March 6, 2007); *Grayson v. Schriro*, No. CIV 05-1749, 2007 WL 91611, *3 (D.Ariz. Jan. 11, 2007) (quoting *Marshall v. United Nations*, No. CIV S-05-2575,

1   2006 WL 1883179, *3 (E.D.Cal. July 6, 2006)). Many or all of the
2   paragraphs from 33 through 207 of the FAC, covering 38 pages, could have
3   been stricken. Alternatively, the judge could have excused Defendants from
4   answering those paragraphs.

5   Hearns, 530 F.3d at 1139.

6   B.   THE   THIRD   CAUSE   OF   ACTION   FOR   RETALIATION   IS
7        CUMULATIVE

8        Each method of showing a Title VII violation is a distinct theory of recovery.
9   Sischo-Nownejad v. Merced Comm. Coll. Dist., 934 F.2d 1104, 1110 n.6 (9th Cir. 1991)
10  (statutorily abrogated on other grounds).  There are three kinds of Title VII claims: (1)
11  disparate impact, which requires proof that a facially neutral employment criterion has
12  an unequal effect on members of a protected class; discriminatory intent need not be
13  proved.  Id. at 1109 (citing Equal Employment Opportunity Comm'n v. Borden's, Inc.,
14  724 F.2d 1390, 1392-93 (9th Cir.1984); (2) disparate treatment, which is intentional
15  discrimination.  Borden's, 724 F.2d at 1392.[1]; and (3) a hostile work environment
16  violation, which consists of "discriminatory intimidation, ridicule, and insult" that are
17  "sufficiently severe or pervasive to alter the condition of the victim's employment and
18  create an abusive working environment."  Meritor Savings Bank, FSB v. Vinson, 477
19  U.S. 57, 65-67, 106 S. Ct. 2399, 91 L.Ed.2d 49 (1986) (quoting Henson v. City of
20  Dundee, 682 F.2d 897, 904 (C.A. Fla., 1982)).

21       In the instant case, the first cause of action alleges "disparate treatment based on
22  race, gender, and EEO activity."  FAC at p. 64.  It clearly includes a retaliation disparate
23  treatment claim, as it alleges that management based adverse employment actions on
24  EEO activity. The second cause of action, meanwhile, alleges that Plaintiff was subjected
25  to a hostile work environment because of his "race, gender, and retaliation for EEO

26  _____

27  [1]      A prima facie disparate treatment case is made if the plaintiff shows that: he belonged
    to a protected class; he was qualified for his job; he was subjected to an adverse employment action; and
28  similarly situated employees not in his protected class received more favorable treatment. Chuang v.
    Univ. of Cal. Davis, 225 F.3d 1115, 1123 (9th Cir.2000).

participation."   The sixth cause of action claims that neutral policies had an adverse impact on individuals who either engaged in EEO activity or are African-American or Hispanic.  The first, second and sixth claims therefore cover all three methods of proving discrimination, and all the prohibited bases alleged by Plaintiff.  As such, Plaintiff's third claim, titled simply "retaliation," adds nothing to his allegations, as it simply states that the "retaliatory actions to which Daves was subjected were materially adverse."  Id. at p.94.  This claim is clearly redundant, given that all three retaliation theories are covered elsewhere in the FAC. The retaliation claim should therefore be dismissed as superfluous.

C.    THE FOURTH CAUSE OF ACTION FAILS TO STATE A VIABLE PATTERN OR PRACTICE CLAIM

"Pattern or practice" suits are a statutorily-authorized government enforcement mechanism.  42 U.S.C. §2000e-6(a)-(c).  The Attorney General and the EEOC may bring suit against an employer who violates Title VII with "a pattern or practice of resistance to the full enjoyment of any of the rights secured."  42 U.S.C. §2000e-6(a).  Pattern or practice principles and rules of proof are also applicable to class action lawsuits brought by private parties. Int'l Broth. of Teamsters v. United States, 431 U.S. 334, 357-60, 975 S. Ct. 1843, 52 L.Ed.2d 396 (1977). Though the Supreme Court has only implied the application in private suits, courts of appeals have permitted pattern or practice class action suits based on that endorsement.  See Penk v. Oregon State Bd. of Higher Educ., 816 F.2d 458 (9th Cir. 1987); Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1559 (11th Cir.1986); Sledge v. J.P. Stevens & Co., 585 F.2d 625, 637 (4th Cir.1978).

1.    Methods of Proof Differ Significantly Between "Pattern or Practice" Suits and Individual Suits

The difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is "manifest."  Cooper v. Fed. Reserve Bank of Richmond, 467 U.S. 867, 876 (1984).  In a "pattern or practice" suit, the plaintiff must demonstrate a prima facie case that the defendant's standard operating procedure included discriminatory practices.  Teamsters, 431 U.S. at 336.  At this stage

Def's MTD Brief   CV08-07376

the plaintiff does not need to prove that any individual was the victim of discrimination, only the existence of a pattern or practice of discrimination. Id. at 360. Once such a prima facie case is established, the burden shifts to the defendant. Id. If the defendant fails to rebut the plaintiff's case, the resulting finding of a discriminatory pattern or practice gives rise to an inference that all employees subject to the policy were its victims and are entitled to appropriate remedies. Id. at 362.

By contrast, a plaintiff in a Title VII case typically establishes a *prima facie* case by showing that he belongs to a protected class and was treated differently than similarly situated employees outside the class, although the elements of a *prima facie* case vary depending on the alleged Title VII violation. For example, if an employee alleges a violation based on protected activity, the *prima facie* case is typically made by showing: 1) He has engaged in statutorily protected expression; 2) He has suffered an adverse employment action; and 3) There is a causal link between the protected expression and the adverse action. E.E.O.C. v. Crown Zellerbach Corp., 720 F.2d 1008, 1012 (9th Cir.1983).

> 2.   Daves Is Not Entitled to the "Pattern or Practice" Method of Proof, Cannot Pursue the Type of Broad Injunctive Relief Sought in "Pattern or Practice" Suits, and did Not Exhaust Class Claims

Because a pattern or practice theory of recovery is focused on establishing a policy of discrimination and not on decisions affecting specific plaintiffs, "it is inappropriate as a vehicle for proving discrimination in an individual case." Mansourian v. Board of Regents of Univ. of Cal. at Davis, 2007 WL 3046034, at *8-*9 (E.D. Cal. 2007) (relying heavily on the Fourth Circuit's opinion in Lowery v. Circuit City Stores, Inc., 158 F.3d 742) (quoting Bacon v. Honda of Am. Mfg., Inc., 370 F.3d 565, 575 (6th Cir. 2004). Other circuits have also held that the "pattern or practice" method of proof is not available

///

///

to individual plaintiffs.  <u>Brown v. Coach Stores, Inc.</u>, 163 F.3d 706, (2d. Cir. 1998); <u>Lowery</u>, 158 F.3d at 760-61; <u>Bacon v. Honda of America Mfg., Inc.</u>, 370 F.3d at 575.

Moreover, "pattern or practice" suits typically seek injunctive relief to address widespread discrimination suffered by a large group.  <u>Lowery</u>, 158 F.3d at 761. On the other hand, the type of relief available in individual suits requires an examination of the circumstances surrounding a single employment action.  <u>Id.</u>  Without Rule 23(b)(2) certification, a plaintiff lacks standing to pursue broad injunctive relief against an employer's broad  "practice" of discrimination.  <u>Davis v. Coca-Cola Bottling Co. Consol.</u>, 516 F. 3d. 955 (11th Cir. 2008) (focusing on the nature of the standing doctrine, issues of res judicata and the tolling of statutes of limitations).  Essentially, the uncertified plaintiff would be attempting to enforce the legal rights of others against the employer. <u>Id.</u> at 968-69.

The Fourth Cause of Action, titled "Systemic discrimination and retaliation based on race, gender, and EEO activity,"  contends that African-American and Hispanic attorneys have historically received sub-standard treatment.[2/]  <u>See</u> FAC at p. 95.  Plaintiff appears to use the "pattern or practice" catchphrase without regard to its true connotation. As a matter of law, Daves, as a single plaintiff, cannot avail himself of the "pattern or practice" method of proof.  Because Daves lacks class certification, this claim must be dismissed.

Moreover, Plaintiff's prayers for relief seek a "preliminary and ultimately permanent" injunction against "any and all past unlawful employment policies, procedures and practices."  <u>See</u> FAC at p. 103, ¶1.  The proposed injunction would bar the USAO from enforcing those policies against "Daves, and employees like him."  <u>Id.</u>

---

[2/]    Plaintiff inappropriately attempts to pursue pattern or practice and adverse impact claims on behalf of Hispanic employees. However Daves lacks standing to bring the claim in his own right and therefore cannot pursue class-oriented claims for Hispanics.  <u>See</u> <u>Foster v. Center Tp. of LaPorte County</u>, 798 F.2d 237, 244 (7th Cir. 1986) ("It is, of course, axiomatic that the named representative of a class must be a member of that class.  Furthermore, it is clear that, if Foster lacked standing to bring the claim in question in her own right, she cannot qualify as a representative of a class purporting to raise the same claim.  Hence, we hold that Foster's class claims must be dismissed.").

Plaintiff further requests a "preliminary and, later, permanent injunction" that would give "Daves and other AUSAs in Daves' protected classes any and all duties and responsibilities that they earned or would have earned but for the unlawful discriminatory and retaliatory conduct." Id. at p.103, ¶¶2. This prayer includes a request restoring "any other constructively discharged employees to their official positions of record and promoting them to management-level supervisory positions." Id. at p. 104, ¶2.

Significantly, Daves concedes that he cannot establish "the development of the critical mass needed to obtain EEO relief as a class." Id. at p. 96, ¶285. Accordingly, it would be futile to permit amendment. Saul v. United States, 928 F.2d 829, 843 (9th Cir. 1991) (while leave to amend is granted liberally, court may deny leave where the amendment would be futile and amended complaint would be subject to dismissal). Given the foregoing, Plaintiff's pattern or practice allegations should be dismissed with prejudice.

Additionally, Daves expressly declined to assert a class claim at the administrative level (see FAC at p. 37, ¶103). A federal employee claiming discrimination must exhaust administrative remedies before seeking judicial relief. See 42 U.S.C. § 2000e-16(c); Siegel v. Kreps, 654 F.2d 773, 776-77 (D.C. Cir. 1981) (exhaustion required prior to federal court action); Wade v. Sec'y of the Army, 796 F.2d 1369, 1377 (11th Cir. 1986). Moreover, only incidents grieved at the administrative level may be raised in federal court. Ong v. Cleland, 642 F.2d 316, 318 (9th Cir. 1981) (exhaustion depends on the "fit" between the administrative charges and the allegations in the judicial complaint). While the Ninth Circuit does not recognize administrative exhaustion requirements as jurisdictional per se, it considers them a statutory precondition to suit. Vinieratos v. Aldridge, 939 F.2d 762, 768 n.5 (9th Cir. 1991). The exhaustion and internal processing of administrative class complaints against a federal agency is also governed by specific regulations. See 29 C.F.R. § 1614.204. As with individual claims, an EEO counselor must be consulted within forty-five calendar days of the matter giving rise to an allegation of class-wide discrimination. 29 C.F.R § 1614.204(b). Within thirty days of

Def's MTD Brief   CV08-07376

initial consultation with the EEO counselor, a final interview is held and the aggrieved party is notified of his right to file a class complaint.  29 C.F.R. § 1614.105(d).  A formal class complaint must be submitted in writing within fifteen days of receipt of the notice of right to file; it must identify the specific policy or practice alleged to be adversely affecting the class, as well as the specific matter affecting the class representative.  29 C.F.R. §§ 1614.204(c)(1)(2).  When a complainant chooses to file a class action instead of an individual complaint, an administrative judge is automatically appointed; the regulations further provide class certification procedures; resolution procedures; hearings and agency decisions; notification of class members of the decision; and the filing of civil actions.  29 C.F.R. §§ 1614.204(d)-(k) and 29 C.F.R. §§ 1614.408 and 1614.410.

Plaintiff has not alleged compliance with any of the class action exhaustion procedures described.  While Plaintiff filed his own individual administrative complaints, courts have consistently held that "exhaustion of individual administrative remedies is insufficient to commence a class action in federal court...one of the named plaintiffs must have exhausted class administrative remedies." Gulley v. Orr, 905 F.2d 1383, 1385 (10th Cir. 1990); see also Artis v. Greenspan, 158 F.3d 1301, 1306-07 (D.C. Cir. 1998) (affirming dismissal where plaintiffs failed to present class-wide claims or to identify any specific agency-wide discriminatory personnel practices during mandatory EEO counseling process); Persons v. Runyon, 998 F. Supp. 1166, 1170-71 (D. Kan. 1998) (dismissing class action because record lacked administrative class complaint and notice of right to file  class complaint); accord Belhomme v. Widnall, 127 F.3d 1214, 1217 (10th Cir. 1997).

> D.    THE FIFTH CAUSE OF ACTION FAILS TO STATE A VIABLE QUID PRO QUO CLAIM

Title VII recognizes sexual harassment as discrimination based on gender. Meritor Savings Bank, FSB v. Vinson 477 U.S. at 63-69.  A plaintiff can establish sexual harassment through either a hostile work environment or quid pro quo theory. Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 751 118 S. Ct. 2257, 141 L.Ed.2d 633 (1998).  The

distinction is between an explicit and a constructive alteration in the terms or conditions of employment. Id. at 752. Hostile work environment involves a constructive alteration brought about by severe and pervasive harassment. Vinson, 477 U.S. at 65-67. The term "quid pro quo" harassment does not appear in any statutory language. Burlington, 524 U.S. at 752. It first emerged in academic literature on sexual harassment, and was later adopted by courts of appeals. Id. A quid pro quo claim occurs exclusively in the sexual harassment context. Quid pro quo sexual harassment exists when an individual explicitly or implicitly conditions a job, a job benefit, or the absence of a job detriment, upon an employee's acceptance of sexual conduct. Nichols v. Frank, 42 F.3d 503, 511 (9th Cir. 1994). In a quid pro quo case, the plaintiff must prove that a tangible employment action resulted from refusal to submit to sexual demands. Burlington, 524 U.S. at 753-54. This requires establishing that the employment decision itself constituted a change in the terms and conditions of employment, rendering it actionable under Title VII. Id.

The fifth cause of action alleges quid pro quo harassment based on "race, gender, and EEO participation." FAC at p. 99. Though quid pro quo is relevant in proving gender discrimination through sexual harassment, Daves does not allege that any employment action was conditioned on his submission to sexual demands. Instead, Daves claims his employment "has become conditioned on his willingness to endure disparate treatment, harassment, and retaliation." Id. at p. 101, ll.3-5. He also alleges that management routinely preferred certain AUSAs but withheld support from disfavored AUSAs. Id. at p.100, ll.6-13. Daves compares his treatment with treatment received by the female African-American attorneys in the office, alleging that it was worse because he had EEO complaints and they did not. Id. at p. 100, ll.14-23. Rather than alleging a viable quid pro quo claim, the fifth cause of action merely restates the same sort of allegations duplicated elsewhere, particularly in the first two causes of action for disparate treatment and hostile environment based on race, gender, and EEO activity. Given that the claim is legally insufficient, redundant and adds nothing to the complaint, it should be dismissed.

E.   PLAINTIFF'S CLAIMS REGARDING THE ADMINISTRATIVE PROCESSING OF HIS EEO COMPLAINT DO NOT PROVIDE GROUNDS FOR RELIEF

Title VII does not provide an independent cause of action for an employer's mishandling of an employee's EEO complaint.  Hill v. England, 2005 WL 3031136, at *2-3 (E.D.Cal. Nov. 8, 2005).  The remedy that Title VII provides for flaws in the administrative complaint process is *de novo* review of the employee's substantive claims in a district court.  Diaconu v. Dep't of Def., 2005 WL 3078193, at *3 (E.D.Pa. Nov. 15, 2005).  Even where an employee alleges that the processing was defective, there is no implied right of action.  Mayes v. Potter, 2003 WL 23220738 (W.D. Mich. 2003) at *5. Kinsey v. Nicholson, 2007 WL 2774211, at *2 (M.D. Fla. Sep. 24, 2007); Bolden v. Ashcroft, 2005 WL 1903567, at *2 (D.D.C. July 15, 2005). The Bolden court relied on 29 C.F.R. §1614.107, which directs agencies to dismiss complaints that allege "dissatisfaction with the processing of a previously filed complaint." 2005 WL 1903567 at *2.

Here, Plaintiff devotes numerous pages of the FAC to the alleged mishandling of his administrative EEO complaint, which he apparently considers part of his "hostile work environment" claim.  See FAC at pp. 83-90.  Daves' problems with EOUSA's handling of his EEO claim include the failure to develop an administrative record, the delay in assigning an investigator, the conduct of the investigator herself and management's alleged complicity in EOUSA's activities.  Id.  While the allegations of EEO impropriety are not segregated as a separate claim, Daves refers to them as independent Title VII violations and asserts that "these calculated actions materially and negatively altered the terms and conditions of Daves' employment."  Id. at p. 84  The complaint also states that management's complicity with EOUSA's actions was itself a violation of Title VII. Id. at p. 90, ll. 1-2.

As a matter of law, there is no right of action for the processing of an EEO complaint.  Rather, the right to file suit in district court eliminates any need to contest the

manner in which previous claims of discrimination were handled.   Accordingly, all claims based on EEO processing allegations should be dismissed with prejudice.

IV

<u>CONCLUSION</u>

The FAC suffers from serious deficiencies.   A few of the defects, such as Plaintiff's attempt to state a class action pattern or practice claim and to pursue claims as to which he lacks standing, cannot be cured by amendment.   To the extent the Court finds that amendment of potentially viable claims is permissible, Plaintiff should be given a reasonable deadline and specific guidelines for re-pleading.   Defendant respectfully suggests that any Second Amended Complaint must allege facts demonstrating that Plaintiff's claims are plausible, rather than merely conceivable.   The new complaint must avoid conclusory, repetitious and inflammatory allegations and be limited to no more than 30 pages in length. Such an order will serve Plaintiff, Defendant and the Court in the speedy, fair and just adjudication of this case.

DATED: September 9, 2009            KAREN P. HEWITT
                                    United States Attorney

                                    s/Cindy Cipriani

                                    Cindy M. Cipriani
                                    Special Attorney
                                    E-Mail cindy.cipriani@usdoj.gov
                                    Timothy C. Stutler
                                    Special Attorney
                                    E-Mail: timothy.stutler@usdoj.gov
                                    Counsel for Defendant
                                    Attorney General Eric Holder

Def's MTD Brief   CV08-07376